UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELITE LIMOUSINE PLUS, INC. and ELITE
LIMOUSINE PLUS, INC. d/b/a ELITE CAR &
LIMO SERVICE,

          Petitioner,

- against -

DISTRICT 15 OF THE INTERNATIONAL
ASSOCIATION OF MACHINISTS AND
AEROSPACE WORKERS, AFL-CIO,

          Respondent.

05 Civ. 10 (RCC)

MEMORANDUM &
ORDER

**RICHARD CONWAY CASEY, United States District Judge:**

Petitioner Elite Limousine Plus, Inc. ("Elite") brings a motion to remand to New York Supreme Court Elite's petition to stay an arbitration demanded by Respondent District 15 of the International Association of Machinists and Aerospace Workers ("District 15"). District 15 brings a motion to consolidate this action with <u>Trustees of Lodge 447 Fringe Benefit Trust Fund v. Elite Limousine Plus, Inc.</u>, Civil Action No. 04-4269, currently pending in the District of New Jersey. For the reasons explained below both motions are denied.

**I.    BACKGROUND**

Elite is a limousine company providing black car dispatching services to corporations and individuals throughout the New York metropolitan area. On January 15, 1999, Elite and District 15 entered into a Joint Marketing Agreement (hereinafter "JMA"). The JMA was then succeeded by an April 19, 1999 agreement (hereinafter "1999 Agreement"). The 1999 Agreement was no longer labeled "Joint Marketing Agreement" but instead simply labeled

1

"Agreement." Clause 12 of the 1999 Agreement states that "[t]his Agreement supersedes and replaces the Joint Marketing Agreement, dated January 15, 1999." (1999 Agreement at 6.)

The 1999 Agreement—signed by Shadquat Chaudhary on behalf of Elite and by James Conigliaro on behalf of District 15—was to remain in effect from February 1, 1999 until February 1, 2002. Thereafter, the agreement would automatically renew from year to year, unless either party provided written notice of its intent to terminate. (See id. at 5.)

The 1999 Agreement required Elite to make specified payments into a fund for the District 15 drivers' health benefits and legal services. (See id. at 3.) It also described the arbitration procedure that would govern any future claim that Elite had failed to transmit the drivers' payments to District 15. (See id. at 2, 5.) The 1999 Agreement referred to the drivers as franchisees and included a clause that stated, "[d]uring the life of this Agreement, the [International Association of Machinists and Aerospace Workers, AFL-CIO] shall not contend that the Elite franchisees are employees for any purposes, including under the National Labor Relations Act." (Id. at 5.)

In August and September 2001, Elite became delinquent in the payments owed District 15 for the health and legal services of its drivers. On October 16, 2001, a Memorandum of Agreement (hereinafter "2001 Agreement") was negotiated and signed by Michael Jaffee on behalf of Elite and a trustee of the District 15 Health Fund. The first clause of the 2001 Agreement states, "Elite agrees that it is a party to a collective bargaining agreement with District No. 15." (Id. at 1.) The agreement does not reiterate the clause stating that the drivers shall not be classified as employees. In addition, Elite admitted it was delinquent in certain contributions owed and agreed to remit payment, including interest, in accordance with a

payment schedule. (2001 Agreement at 1.)

On April 16, 2003, the parties agreed to continue their agreement, with certain amendments (hereinafter "2003 Agreement"). The 2003 Agreement includes health

In early 2004, District 15 informed Elite that it would no longer provide health benefits for the same price. Elite replied that it was unable to increase the existing payment amounts. As a result, the parties orally agreed that the contributions would be redirected from the Health Fund to a Money Purchase Employee Pension Plan (hereinafter "MPEPP"). (See District 15's Opp'n Mot. at 4.) Another Memorandum of Agreement was drafted with an effective date of April 1, 2004 (hereinafter "2004 Agreement"). It was intended to be an "integral part of the Collective Bargaining Agreement," and was to "supersede[] any applicable/pertinent agreements and/or understandings of the past." (2004 Agreement at 2.) Elite never signed the 2004 Agreement.

On September 2, 2004, the MPEPP and the Trustees of Lodge 447 Fringe Benefit Trust Fund brought suit against Elite in the United States District Court for the District of New Jersey for failure to pay benefit contributions for its drivers. Elite filed its Answer and a Third Party Complaint against District 15 in the New Jersey District Court on November 10, 2004.

Then, on November 18, 2004, Elite sent a letter to District 15 giving notice that it would "terminate the agreement between Elite and [District 15] as of February 1, 2005." (See Elite's Mot. to Remand, Ex. E.) On November 24, 2004, District 15 requested arbitration to determine the existence of an agreement between the parties beyond February 1, 2005 and "related issues." (See Elite's Mot. to Remand, Ex. C (District 15's letter to arbitrator).) On December 13, 2004, Elite petitioned the New York Supreme Court for a stay of arbitration. District 15 then removed the proceeding to this Court pursuant to 28 U.S.C. §§ 1441, 1446. Elite now seeks to remand

this proceeding to New York Supreme Court and District 15 seeks to consolidate this matter with the ongoing proceeding in the New Jersey District Court.

II.    DISCUSSION

   A.    **Removal to Federal Court is Proper**

Elite argues on the rule that removal is improper if, on the face of a well-pleaded complaint, the cause of action stated does not arise under federal law. See, e.g., Vitarroz Corp. v. Borden, Inc., 644 F.2d 960, 964 (2d Cir. 1981). However, "[c]ourts in this district have consistently upheld the removal of petitions to stay arbitrations of grievances under collective bargaining agreements, even where the petitions made no reference to federal law." Triple A Maintenance Corp. v. Bevona, 657 F. Supp. 1171, 1172 (S.D.N.Y. 1987) (collecting cases). As such, if a petition to stay arbitration is made pursuant to a collective bargaining agreement, it necessarily arises under federal law, whether there is reference to federal law or not. Id. at 1172-73.

Federal jurisdiction is proper even where a contract is not a traditional collective bargaining agreement. Section 301(a) of the Labor Management Relations Act, 61 Stat. 156, 29 U.S.C. § 185(a), confers federal jurisdiction over suits "for violation of contracts between an employer and a labor organization representing employees." In Retail Clerks Int'l Ass'n v. Lion Dry Goods, 369 U.S. 17, 28 (1962), the Supreme Court defined "contracts," as used in Section 301(a), to include "agreement[s] between employers and labor organizations significant to the maintenance of labor peace between them," whose "terms affect the working conditions of the employees." More recently, in Dist. 2 Marine Eng'rs Beneficial Ass'n-Associated Mar.

4

Officers, AFL-CIO v. Grand Bassa Tankers, Inc., 663 F.2d 392, 398 (2d Cir. 1981), the Second Circuit interpreted a non-traditional collective bargaining agreement which governed "certain terms and conditions of the employer's relations with its employees." The court found that agreements of the kind in Retail Clerks have been enforced by federal courts exercising their jurisdiction under § 301(a). Id.

The first clause of the 2001 Agreement identifies it as a collective bargaining agreement. (2001 Agreement at 1.) Even if the agreement were not so defined, it is a contract in which Elite drivers designated District 15 as their agent and authorized the union to collect from Elite payments on their behalf for health and legal services. (See 1999 Agreement at 2-3.) It is therefore a labor contract of the kind seen in Retail Clerks and Grand Bassa Tankers that governs terms of the employer's relations with its employees. Elite argues that the agreement cannot be a collective bargaining agreement because it claims the drivers are not employees, but independent contractors. This argument ignores the fact that Elite signed the 2001 Agreement, stipulating in the first clause that it was a party to a collective bargaining agreement.[1] Because the agreement between the parties is a collective bargaining agreement as defined by the case law, the exercise of federal jurisdiction is proper and the motion to remand is denied.

### B. Consolidation is Not Warranted

---

[1] Further, on November 6, 1977, the National Labor Relations Board affirmed the Regional Director's decision that the Elite drivers "are employees within the meaning of Section 2(3) of the Act, and not independent contractors." Elite Limousine Plus, Inc. v. Limousine Drivers' Union, 324 NLRB 992, 992 (1997). The Board based its decision on the limited amount of entrepreneurial activity Elite allowed its drivers. Although that decision preceded the agreements at issue here, there is no indication in the factual record that Elite changed its business operations in the intervening two years to afford its drivers a greater amount of entrepreneurial activity than that which existed in 1997.

Consolidation is generally appropriate where the proceedings involve a common question of law or fact, Fed.R.Civ.P. 42(a), and so long as any confusion or prejudice does not outweigh efficiency concerns. See International Paving Sys. v. Van-Tulco, Inc., 806 F. Supp. 17, 22 (E.D.N.Y. 1992). Further, a district court has broad discretion to consolidate actions. E.E.O.C. v. Die Fliedemaus, 77 F. Supp. 2d 460, 466 (S.D.N.Y. 1999).

It is true that should this matter reach arbitration, it will involve interpretation of the collective bargaining agreement that is also at issue in the New Jersey proceeding. However, the arbitration demanded here is concerned with whether the agreement should extend past February 1, 2005, while the New Jersey proceeding focuses on contribution amounts unpaid prior to that date. The two proceedings do not entail the same incidents or legal theories. Thus, the efficiency objective of consolidation would not be furthered by consolidating the cases. On the contrary, consolidating the ongoing pension fund proceeding in New Jersey with the jurisdictional issues surrounding the present stay of arbitration would create confusion for the courts and the parties involved. The resolutions of these proceedings are not interdependent and as such District 15's motion to consolidate is denied.

## III. CONCLUSION

For the foregoing reasons, the Court finds that removal to federal court of the petition to stay arbitration is appropriate. Elite's motion to remand the case is denied. Further, this Court finds that consolidation with <u>Trustees of Lodge 447 Fringe Benefit Trust Fund v. Elite Limousine Plus, Inc.</u>, Civil Action No. 04-4269, currently pending in the District of New Jersey, is not proper and District 15's motion to consolidate is denied.

So Ordered: New York, New York
June 29, 2006

_____
Richard Conway Casey, U.S.D.J.